UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORTINA ANN GATER,

    Plaintiff,

v.

RUSSELL COLLECTION AGENCY, INC.,

    Defendant.
                           /

Case No. 15-10033

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13] AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT [17]**

This matter comes before the Court on the parties' cross-motions for summary judgment. For the reasons stated below, Defendant's motion for summary judgment on Count VI is GRANTED. Both parties' cross-motions for summary judgment on Count I are DENIED.[1]

**I.   Facts**

Plaintiff Cortina Ann Gater received services from Botsford Imaging Center ("Botsford Medical Imaging" or "BMI") on April 29, 2012. (Dkt. 1, at ¶ 8.) On March 27, 2013, Plaintiff filed a Chapter 7 bankruptcy petition in the Eastern District of Michigan. (Dkt. 1, at ¶ 10.) In connection with her Chapter 7 bankruptcy petition, Plaintiff disclosed a 2012 debt of $541

---

[1] Counts II, III, V, and VI were previously dismissed in this matter. (Dkt. 3.) Plaintiffs' arguments on such Counts are thus moot and not addressed. The Court further notes that Plaintiff's cross-motion was procedurally improper. Pursuant to Rule 5 of the Electronic Filing Policies and Procedures governing the Eastern District of Michigan, "a response or reply to a motion must not be combined with a counter-motion." While the Court could strike this Motion for failure to comply, the Court need not do so in light of the discussion herein.

owed to Botsford Medical Imaging. (Dkt. 14-1, at 24.) On July 2, 2013, Plaintiff received her Chapter 7 Bankruptcy discharge. (Dkt. 1, at ¶ 11.)

On January 21, 2014, BMI referred the debt at issue to Defendant Russell Collection Agency for collection. (Dkt. 14-4, at ¶ 8.) The next day, on January 22, 2014, Defendant mailed an initial collection notice to Plaintiff. (*Id.* at ¶ 9.) According to Defendant, the notice informed Plaintiff of certain rights, "including the right to make a written request for verification of the debt and to dispute the validity of the debt within thirty days." (*Id.* at ¶ 10.) Defendant contends that on February 6, 2014, Plaintiff called Defendant and advised the agent with whom she was speaking that she had filed for bankruptcy. (*Id.* at ¶ 12.) Upon being advised of this, Defendant's agent noted the account and contacted the bankruptcy court by phone to obtain the necessary filing information. (*Id.* at ¶¶ 13-14.) Defendant claims its agent then marked and closed the account to prevent any further collection efforts. (*Id.* at ¶ 16.) Plaintiff does not contend that she was ever contacted by Defendant regarding the debt again.

On January 6, 2015, Plaintiff filed the instant action. (Dkt. 1.) Plaintiff alleges that Defendant's initial collection letter regarding the $541 debt violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq* and moves the Court to enter judgment in her favor.[2] Defendant also moves the Court to grant summary judgment in its favor. Defendant first contends that no violation of the FDCPA occurred because it had no notice of the bankruptcy proceeding. (Dkt. 13, at 10-12.) And even

---

[2] The Court notes Plaintiff has argued Defendant's motion should be denied for failing to comply with local rule 7.1(a). (Dkt. 17, at 11.) The Court declines to deny Defendant's motion on this basis.

assuming a violation, Defendant argues such violation is excused as a bona fide error. (Dkt. 13, at 12.)

## II. Summary Judgment

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Count I: FDCPA

The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

3

As the Sixth Circuit has noted, however, "[w]hile Congress appears to have intended the act to eliminate abusive collection practices," the language of the statute is broader than the stated purpose. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir. 1998). *See also Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992) (describing the FDCPA as an "extraordinarily broad statute").

FDCPA violations are analyzed in this Circuit under a "least sophisticated debtor" standard. *See, e.g.*, *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999). As applied, this standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Id.* (citation omitted). This objective test ensures that the FDCPA "protects all consumers, the gullible as well as the shrewd." *Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) (citation omitted).

### 1. False, Deceptive, or Misleading Representation

Section 1692e of the FDCPA generally prohibits a debt collector from using any false, deceptive or misleading representation or means in connection with the collection of a debt. 15 U.S.C. § 1692e. Here, Plaintiff alleges that Defendant violated § 1692e by falsely representing that the debt to BMI was owed by Plaintiff, despite having been discharged in bankruptcy.[3] (Dkt. 17, at 6.) Plaintiff further argues that Defendant is not shielded from liability "even if Defendant Russell did not have actual notice of the bankruptcy." (Dkt. 17, at 8.)

---

[3] Plaintiff's complaint does not specify which provision of the FDCPA she alleges has been violated by Defendant's conduct. Plaintiff's response and cross-motion for summary judgment, however, references only Section 1692e; for that reason, the Court considers only that Section.

4

Defendant admits that it is a debt collector under the FDCPA. (Dkt. 8, at ¶ 5.) Defendant also admits that it "mailed its initial collection notice to Plaintiff" on January 22, 2014, which was several months after Plaintiff had been discharged from bankruptcy. (Dkt. 13, at 4-5.) In addition to invoking the bona fide error affirmative defense, Defendant makes two arguments purportedly in support of its contention that it did not violate Section 1692e. First, it cites the purpose of the FDCPA, and second, it argues Defendant "had no notice that Plaintiff had filed for bankruptcy" and "debt collectors ... are not required to independently investigate the validity of debts ... prior to commencing collection activity." (Dkt. 13, at 10-11.) With regard to the first contention, the Court has already noted that the language of the statute is broader than Congress's stated purpose. Still, the statute must be enforced as written. *See Frey*, 970 F.2d at 1521.

Second, notice or knowledge that Plaintiff had filed for bankruptcy is not required to find a violation of the FDCPA. *See, e.g.*, *Gamby v. Equifax Info. Servs. LLC*, 462 F. App'x 552, 556 (6th Cir. 2012) (noting "under the FDCPA, outside of the relatively narrow bona-fide error exception, a good-faith error still gives rise to liability"); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (reversing district court's dismissal of FDCPA claim where debt collector sent collection letter because it lacked knowledge that the debt had been discharged in bankruptcy). While Defendant's lack of knowledge may be relevant to the bona fide error inquiry, it is not in itself sufficient to find that no false or misleading representation was used in connection with collection of the debt. The Court thus turns to the bona fide error defense.

2. **Bona Fide Error**

Under Section 1692k(c) of the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The bona fide error defense thus requires the defendant to prove that: (1) the violation was not intentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir.2009).

The Court first addresses the third requirement. The determination of whether the debt collector maintained procedures reasonably adapted to avoid error is a "fact-intensive inquiry" and is typically left to the fact-finder to resolve. *Montgomery v. Shermeta, Adams & Von Allmen, P.C.*, 885 F. Supp. 2d 849, 857 (W.D. Mich. 2012). *See also Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011). Where the record clearly establishes, however, that "procedures in place are extensive and were adhered to, the matter may be resolved as a question of law." *Montgomery*, 885 F. Supp. 2d at 857.

In support of its motion, Defendant has submitted an affidavit from Gerald Wenta, Vice President of Defendant collection agency. (Dkt 14-4.) In the affidavit, Wenta swears that Defendant "does not attempt to collect debts that are subject to the bankruptcy stay or have been discharged in bankruptcy, nor does it knowingly accept such accounts from clients for collection." (Dkt. 14-4, at ¶ 24.) Wenta further states that Defendant "mails an initial collection notice for all new accounts placed with

6

[Defendant]." (*Id.* at ¶ 10.) Wenta then articulates the policies and procedures in place to close or mark accounts once it "receives notification of bankruptcy." (Dkt. 14-4, at ¶¶ 25-30.) In an interrogatory response, Defendant further states that it "has implemented procedures to perform bankruptcy scrubs on new account placements." (Dkt. 17, at 9.) Plaintiff argues, however, that Defendant "has no procedures in place to ascertain whether a Consumer had previously filed or received a discharge in bankruptcy prior to sending its demand letters." (*Id.*)

While Defendant has sworn that it "does not attempt to collect debts that are subject to the bankruptcy stay or have been discharged in bankruptcy," nor "knowingly accept such accounts from clients for collection," it has not provided any detail regarding how it implements these general policies. It has not shown, for example, whether it has an agreement with clients that they will not knowingly refer debts involved in bankruptcy proceedings. Nor has Defendant stated whether it even *asks* its clients whether debts being referred are involved in bankruptcy proceedings. And while Defendant's interrogatory response indicated it "has implemented procedures to perform bankruptcy scrubs on new account placements," it has submitted no evidence about the scrubs generally, nor evidence showing that such a scrub was performed in this instance. As Plaintiff correctly notes, here Defendant *did* accept and attempt to collect a debt that had been involved in a Chapter 7 bankruptcy proceeding. (Dkt. 17, at 10.)

The bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors, it only requires reasonable precaution." *Charbonneau v. Asset Acceptance, LLC*, 611 F. Supp. 2d 736, 743 (E.D. Mich. 2009)

(citation omitted). Defendant has not, however, presented enough evidence to show that it takes reasonable precaution to avoid accepting and attempting to collect debts that have been discharged in bankruptcy. *See McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 373 (E.D. Mich. 2011) (denying summary judgment where defendant presented no evidence as to "whether it would even inquire—as a matter of procedure—if the debt it was collecting had been previously disputed by the consumer").

Merely maintaining policies and procedures to correct mistakes *after* sending out an initial collection notice would not be sufficient. *See Owen*, 629 F.3d at 1275 ("Congress designed the FDCPA to prevent debt collection abuses, not to furnish debt collectors with a free pass as to errors in their first collection attempts."). The bona fide error defense requires a defendant to show that it maintained procedures reasonably adapted to *avoid* any such error, not merely to *correct* such error. *Hartman*, 569 F.3d at 614. While Defendant may ultimately be able to prevail on this defense by shedding light on the specific ways in which it implements its claimed policies, the Court finds this is a question of fact that cannot be resolved here. The record here does not clearly establish that the procedures in place are extensive and were adhered to, and thus the matter cannot be resolved as a question of law for the Court. Because this aspect of the bona fide error defense is dispositive of this claim on summary judgment, the Court refrains from addressing the remaining requirements.

### B. Count IV: Telephone Consumer Protection Act

As previously noted, Plaintiff's state law claims—Counts II, III, V, and VI—were dismissed on January 21, 2015. (Dkt. 3.) The parties' arguments regarding these

Counts in the pending motions are thus moot and are not addressed. With regard to Count IV, a federal claim alleging a violation of the Telephone Consumer Protection Act that was not previously dismissed, Plaintiff now states she does not oppose its dismissal. (Dkt. 17, at 11.) Accordingly, the Court grants Defendant's motion for summary judgment on Count IV and that Count is dismissed.

### C. Unclean Hands

Lastly, Defendant contends that this suit should be dismissed under the unclean hands doctrine. (Dkt. 13, at 19-23.) Defendant argues that "any inadvertent violation of the FDCPA by [Defendant] stems from [Plaintiff's] own, undisputed failure to properly schedule the Debt." (Dkt. 13, at 19.) The doctrine of unclean hands "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). As the Sixth Circuit has stated, "unclean hands [is] not to be lightly inferred. [It] must be established by clear, unequivocal and convincing evidence." *Kearney & Trecker Corp. v. Cincinnati Milacron Inc.*, 562 F.2d 365, 371 (6th Cir. 1977) (quotation marks and citation omitted). Here, Defendant has not presented such clear, unequivocal and convincing evidence. Defendant argues Plaintiff's "misconduct" was in "failing to list or schedule debts and creditors, along with their proper addresses, so that notice of the bankruptcy [could] be properly transmitted to such creditors." (Dkt. 13, at 22). First, it is no surprise that Defendant was not listed on Plaintiff's schedule of debts filed in connection with her application for Chapter 7 bankruptcy because the debt at issue had not yet been referred to Defendant. Second, according to the exhibit attached to Defendant's motion, the debt at issue *was* listed on the schedule, and an address

was listed in connection with it. (Dkt. 14-1, at 24.) Whether the address listed was the right address is another question, but one which would not change the outcome here. Defendant has not presented unequivocal and convincing evidence that judgment should be granted in its favor under the unclean hands doctrine.

### III. Conclusion

Being fully advised in the premises and having read the pleadings, the Court hereby DENIES Defendant's motion for summary judgment on Count I, and GRANTS Defendant's motion for summary judgment on Count IV. The Court DENIES Plaintiff's cross-motion for summary judgment.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 10, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2015, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager